# Sample *v.* The State.

*Application for Habeas Corpus.*

1. *Habeas corpus; constitutional guaranty of right to speedy trial.*
   The constitutional privision declaring that an accused, in all
   prosecutions by indictment, should have a right to a "speedy
   public trial" by a jury, does not entitle the accused to a dis-
   charge on account of the failure of the law, while reasonably
   adapted to secure a speedy trial, to provide against every con-
   tingency which may occasion a delay in any particular case,
   or on account of any delay made necessary by the law itself.

APPEAL from the Circuit Court of Hale.

Heard before the Hon. JOHN MOORE.

The appellant in this case, William Sample, filed an application for *habeas corpus,* addressed to the Judge of the Fourth Judicial Circuit of the State of Alabama, holding court in the county of Hale, by which the petitioner averred that he was, at the time, in custody under an indictment for murder in the first degree, and prayed that a writ of *habeas corpus* be issued and that he be discharged from such custody, on the ground that he had been denied a speedy trial to which he was entitled under the constitution of the State of Alabama and the United States.

It was averred in the petition and shown in the evidence, that the petitioner was originally arrested under a warrant issued by a justice of the peace in July, 1902, charging him with murder; that subsequently an indictment was preferred by the grand jury of Hale county against him. The other facts of the case, as to why he was not tried at the term of the court at which the indictment was preferred, are set forth in the opinion. Upon the hearing of the petition, there was evidence in behalf of the petitioner tending to show that on the day the petitioner's co-defendants was arraigned and the day was fixed for their trial, that the solicitor stated he expected to enter a *nol. pros.* as to the petitioner, while the

[Sample v. The State.]

evidence for the State tended to show that the solicitor's statement was that he could not make out a case for the State against the petitioner and that he would not proceed with it unless the people of the community in which the crime occurred, insisted on the petitioner being put to trial. The other facts of the case are shown in the opinion.

Upon the hearing of the petition and the facts, the judge entered a decree refusing the prayer of the petition, declined to discharge the petitioner, and ordered the petition dismissed. From this judgment the present appeal is prosecuted.

DeGraffenried & Evins, for appellant, cited 15 Am. & Eng. Ency. of Law, 164; *United States v. Fox,* 3 Mont. 512; *Ex parte State,* 76 Ala. 482; *State v. Fasket,* 5 Rich. (S. C.) 255; *In re McMicken,* 39 Kan. 406; *In re Garvey,* 7 Col. 502; *State v. Sims,* 1 Overton (Tenn.) 253; *Ex parte Caples,* 58 Miss. 358.

Massey Wilson, Attorney-General, for the State, cited *United States v. Fox,* 1 Mont. 512; *Durham v. State,* 9 Ga. 306; 6 Am. & Eng. Ency. of Law, (2d ed.), 993.

TYSON, J.—This appeal is from an order denying a petition for a writ of *habeas corpus*. The theory of the petition is that the accused has been denied his constitutional right of a speedy trial. "A speedy trial means a trial regulated and conducted by fixed rules of law and any delay created by the operation of those rules does not work prejudice to any constitutional right of the defendant."—Church on Habeas Corpus, § 254; *Nixon v. The State,* 41 Am. Dec. 604 and note; 6 Am. & Eng. Law, (2d ed.), 992-3.

In *Tate's case* (76 Ala. 484), this court, speaking to this point, said: "By the Declaration of Rights, the accused, in all prosecutions by indictment, has a right to 'a speedy public trial, by an impartial jury of the county or district in which the offense was committed.' The constitutional provision contemplates legislative enact-

[Sample v. The State.]

ments and may be regarded as mandatory on the legislature—enjoining the duty to organize competent courts, to establish suitable modes of judicial proceedings, and provide adequate machinery for the administration of the criminal law; so that there shall be no unreasonable or unnecessary delay in bringing on a trial. Much must be left to the sound discretion and judgment of the lawmaker, to make such provisions as will guard, on the one hand, against undue haste to the detriment of the public interests and safety, and on the other, against improper, unjust, and unwarranted procrastination, to the denial of the rights of the accused. When there have been legislative enactments, reasonably adapted to secure a speedy trial, the constitutional guaranty can not operate to discharge the accused, because of mistaken legislation, or because of a failure to foresee and provide for every contingency which may occasion delay. Continuances in the discretion of the presiding judge, or delay occasioned by want of time to try, or any like necessitating circumstances, do not contravene the right to a speedy trial. The accused is not entitled to a discharge by reason *of any delay made necessary by the law itself.* * * The right of a speedy trial does not operate to deprive the State of a reasonable opportunity of prosecuting criminals. If the laws enacted have the effect to prevent or unduly impede a trial, the appeal must be made to the courts, whose province it is to pronounce them void and inoperative, if violative of the constitution. If the legal enactments be defective and inefficient, the remedy is in the election of competent legislators. The constitution declares the rights and enjoins the duty to protect. It does not declare the consequence of an entire omission, or of inefficient protection."

The record discloses that petitioner and three others were indicted for a capital offense at the Fall term 1902 of the circuit court. This indictment was returned into open court and filed on the 8th day of October, 1902. On the next day all of the defendants named in the indictment, including petitioner, were arraigned upon the indictment and separately pleaded not guilty, and on motion of each severance was granted and an order en-

tered for the trial of each of the defendants separately. Thereupon the court fixed the 16th day of October, it being Thursday of the succeeding week, for the trial of the defendant first named in the indictment and entered an order for the drawing of a special *venire*, comprising twenty-five names, which were drawn from the jury box in accordance with the provisions of the statute. After making the necessary order for the summoning of this special *venire*, the serving of the names of the jurors to try the case and of a copy of the indictment upon the defendant, the court, by another and separate order fixed the 17th day of October, it being Friday of the week succeeding the arraignment, for the trial of the defendant named second in the indictment and ordered a special *venire* of twenty-five names to try his case. In drawing the *venire*, it appears the box containing the names of jurors was exhausted, and resort was had to that provision of the statute which authorized a direction to the sheriff to summon from the qualified citizens of the county a sufficient number of persons necessary to complete the number of special jurors ordered by the court.—§ 5004 of Code.

Had the court, pursuing the order in which the names appeared in the indictment, which, of course, he had the right to do, the petitioner being the third, set a day for his trial, the jury box having been exhausted, it would have been powerless to try him. It is almost needless to say that the statute requiring a special *venire* for the trial of the case is mandatory and that the State is as much entitled to the benefit of its provisions as the accused. No provision being made for the summoning of a special *venire* by the court where the jury box has been exhausted before entering upon the drawing of a special *venire* and no authority being conferred upon the court to re-fill the box or to command the officers of the county charged with this duty to do so, it was impossible to try the case at that term of the court. The delay here, under the circumstances pointed out, may be fairly attributable, indeed we may say was wholly attributable, to an omission in the legislative enactments to provide against the contingency noted above. This being true, the statement made by the prosecuting

attorney, whatever it may have been and however much it may have influenced the court not to fix a day for the trial of the petitioner, becomes inconsequential.　For clearly the failure to set a day is of no moment, if a trial, according to the rules and regulations prescribed by our statutory system, could not have been had.

Affirmed.